**G.M. ZEMANSKY, Plaintiff-Appellant,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant-Appellee.**

**No. 84–4089.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1985.

Decided July 29, 1985.

Charles E. Ehlert, Smith, Brucker, Winn & Ehlert, Seattle, Wash., for plaintiff-appellant.

Barbara J. Lither, Asst. Regional Counsel, Seattle, Wash., Marie Creson, Asst. U.S. Atty., Tacoma, Wash., for defendant-appellee.

Before HUG, FARRIS, and BOOCHEVER, Circuit Judges.

HUG, Circuit Judge:

Appellant Zemansky filed suit against the United States Environmental Protection Agency ("EPA") alleging nine instances of EPA noncompliance with the Freedom of Information Act, 5 U.S.C. § 552 (1982). On EPA's motion for summary judgment, the court dismissed the complaint finding that EPA had provided Zemansky all pertinent documents in its possession. Zemansky appeals, arguing that EPA failed to perform an adequate search for documents relating to two of the instances. The district court also granted EPA summary judgment on the latter's counterclaim, which sought a declaration of EPA's obligation to respond to Zemansky's requests for nondocumentary material. Zemansky also appeals this ruling. We affirm except with respect to portions of the district court order placing special requirements on Zemansky's future Freedom of Information Act ("FOIA") requests.

## I

## BACKGROUND

Zemansky is a doctor of civil engineering interested in the enforcement of environmental regulations in the construction of the Trans-Alaskan Pipeline System ("TAPS"). He has made regular and frequent use of the FOIA.[1] Nearly all requests involved activities of EPA's Alaska Operations office, a sub-office of the Seattle Regional Office.

The EPA complains that it often found Zemansky's requests difficult to comprehend "in that they contained questions, commentary, narrative, and requests for 'information' as well as requests for 'appropriate reports.'" Zemansky sometimes also asked that EPA justify various policies and actions. The EPA nevertheless seems to have responded adequately to the vast majority of requests. Zemansky was dissatisfied, however, with EPA responses to nine particular requests that he made during 1981 and 1982. These requests for documents and information concerned various matters, including water quality testing and TAPS construction.

In May, 1983, Zemansky sued EPA to obtain appropriate responses to these nine requests. While the litigation was pending, EPA provided Zemansky hundreds of pages of documents pursuant to requests three through nine. EPA then moved for summary judgment, submitting six affidavits, four of which addressed either claim one, claim two, or both. These described the efforts made to find documents pertinent to either of the first two claims, and the inability to locate any such documents. The district court granted the summary judgment motion as to all nine claims. On appeal, Zemansky only disputes the dismissal of the first two claims.

The EPA also moved for summary judgment on its counterclaim, which sought a declaration of EPA's obligations under FOIA to generate documents explaining its policies and actions. The district court also granted this motion, holding that "EPA has

[1]. EPA records show 82 such requests in 1982 alone.

no duty under the FOIA to answer questions unrelated to a request for documents, and it has no duty to create documents." The court also placed several conditions on Zemansky's future use of the FOIA: Each request must be "in a separate document which is clearly identified as an FOIA request and which identifies with as much specificity as possible the documents requested." Further, "FOIA requests are not to be intertwined with non-FOIA matters."

Zemansky contends that the affidavits are inadequate because the searches described therein were deficient. He argues that the district court's entry of summary judgment in EPA's favor on EPA's counterclaim was improper because there was no "case or controversy" since both parties agreed that the FOIA does not mandate that EPA generate information, or supply information other than that contained in documents properly the subject of FOIA requests. Alternatively, Zemansky argues that the restrictions placed on his use of FOIA lack a legal basis. The EPA counters that the issue is moot on appeal since there no longer is a dispute over the issue.

## II

## ANALYSIS

### A. *Summary Judgment on the Complaint.*

■ On appeal, Zemansky disputes only that portion of the dismissal of his complaint relating to the first and second instances of alleged EPA noncompliance with the FOIA. The district court found that affidavits EPA submitted with its summary judgment motion depicted an adequate search for the documents requested in both

instances. In reviewing this decision, the facts must be viewed in the light most favorable to the requestor. *See Weisberg v. United States Dept. of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984). The agency must:

> demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." Further, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate.* The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

*Id.* (Citations omitted.) (Emphasis in original.) The district court reached its decision in favor of EPA by applying a substantively identical test. *See Weisberg v. United States Dept. of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983).

### 1. *Instance One*

■ The basis of the first instance of alleged noncompliance with FOIA was a letter to EPA's Region 10 office dated September 29, 1981 requesting, as later characterized by Zemansky, documents relating to (1) "EPA water quality surveys in Alaska" and (2) "interactions" between EPA and the TAPS builder, Alyeska. Zemansky complains on appeal that "EPA's response overlooked the second group *entirely....* EPA has produced no affidavit or specific explanation of any search for records of the second group requested." [2] (Emphasis

---

**2.** The relevant requests are:

In accordance with the provisions of the FOIA, the following documents referred to in the indicated "weekly activity reports" submitted to the Regional Administrator *during 1975 are hereby requested:*

....

3. 19 June 1975, AOO—In this report it is stated that "Alyeska Pipeline Service Co. auditors have again expressed displeasure over the amounts they are being charged by EPA for

pipeline monitoring." Presumably auditors must have something in writing to audit. Copies of all documents regarding pipeline monitoring reimbursement by Alyeska for EPA monitoring of the *trans-Alaska oil pipeline system during the period of 1 January 1974 through 31 December 1978 (including reports, audits, letters, memorandums, etc.* which detail any aspect of this matter including reports submitted to Alyeska for reim-

is Zemansky's.) The EPA maintains that its affidavits were sufficient.

The affidavits portray an adequate search for documents related to "interactions" between EPA and Alyeska. Micheline Ward, the FOIA coordinator for the Region 10 Water Division since June, 1982, was assigned to review Zemansky's requests and search for, or initiate searches for, relevant documents. In her affidavit, Ward describes her search for certain documents requested in the letter of September 29, 1981 "generally regarding the trans-Alaska pipeline system," thus clearly addressing herself to the "second group." Ward reports finding an October 22, 1981 letter to Zemansky from James Sweeney, the then-Director of the Alaska Operations Office ("AOO"), stating that none of the requested material could be found at the AOO. The files also showed that Ward's supervisor had contacted Sweeney's successor, who also reported finding no relevant documents.

Ward also contacted Sweeney, who told her that he had "no knowledge of any existing AOO documents" other than some that had been sent to the Seattle regional office for EPA attorney Cheryl Koshuta to review as part of her work in another Zemansky-EPA suit. At Ward's request, Koshuta reviewed the documents that had been sent to her (consisting of one large box of files) and found nothing "generally regarding the Trans-Alaska-Pipeline." Based on her "personal knowledge of the contents of the files," Koshuta concluded that the "files in my custody do not contain documents which are in response to the FOIA request" of September 29, 1981.

Ward's supervisor, Robert Burd, submitted an affidavit explaining that the AOO files had been shipped to the Seattle office for Koshuta's use. Burd also reports checking with Sweeney's successor at AOO, who reported finding nothing responsive to the request.

Contrary to Zemansky's assertions, the affidavits do not ignore the second group of documents requested in the September 29, 1984 letter, that is, those relating to "inter-actions" between EPA and the TAPS builder Alyeska. The affidavits all report searches for documents responsive to this letter and generally related to TAPS.

### 2. *Instance Two*

Zemansky's second claim stemmed from his November 27, 1981 letter to EPA requesting documents "regarding planning of State of Alaska-EPA roles for the 1982 placer mining season and a meeting held November 2, 1981 to discuss EPA's role." Zemansky contends that the affidavits did not sufficiently address attempts made "to locate records of this meeting." The affidavit of Ward notes that the letter was not treated as an FOIA request because "it appeared to be a personal letter to the Regional Administrator." Ward also said in her affidavit that if such records existed (pertaining to inter-agency roles), they most likely would be maintained by the State-EPA Agreement ("SEA") Coordinator, Julie Hagensen. In her affidavit, Hagensen reports that she was "unable to locate any specific document responsive" to the request for documents "pertaining to the planning of interagency roles for the 1982 placer mining season." Hagensen examined "the Alaska FY '81 and FY '82 SEA files as well as the general SEA files for FY '81–82" while searching for responsive documents.

Zemansky argues that EPA's affidavits are inadequate because neither of the two EPA employees attending the November 2, 1981 meeting was "ever asked to locate records of this meeting," even though one of them, Diane Soderlund, did produce an affidavit and records concerning another

---

bursement and the results of Alyeska audits and/or complaints about these amounts);

. . . .

5. 30 October 1975, AOO—In this report it is indicated that representatives of Alyeska requested to see the EPA's permit files for

Alaska NPDES permits (including compliance). Copies of any communications (letters, memorandums, records of telephone calls, etc.) regarding this interaction and information supplied to Alyeska are hereby requested; . . . .

meeting. The EPA notes that it did not know who had attended the meeting until Zemansky provided the information in his answering affidavit and that, at that time, EPA did inquire of Soderlund, who was able to produce some "rough, handwritten notes on yellow paper" that might have been responsive. Those were offered to Zemansky during a prebriefing telephone conference and, apparently, refused.

Zemansky recognizes that "[a]ffidavits describing agency search procedures are sufficient for purposes of summary judgment only if they are relatively detailed in their description of the files searched and the search procedures, and if they are non-conclusory and not impugned by evidence of bad faith." (Citing *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C.Cir.1983)). The EPA affidavits meet this standard.

B. *Summary Judgment on the Counterclaim.*

The district court also granted summary judgment for EPA on its counterclaim for declaratory relief, holding that "the EPA has no duty under the FOIA to answer questions unrelated to a request for documents, and it has no duty to create documents." The court also noted:

Because this is an FOIA case, I am not going to make a ruling with respect to any duty [that] defendant may have under any other statute to respond to inquiries by plaintiff. Whether there is a duty under other statutes is not before the Court and cannot be raised in this FOIA action.

■ Zemansky disputes the judgment on the counterclaim on two grounds. First he maintains that the EPA sought to avoid obligations it has to answer questions under several statutes and regulations other than the FOIA. While there originally was

some dispute over the breadth of the declaratory relief that EPA was seeking, EPA clarified its counterclaim in argument before the district court, requesting only a statement of its obligations under FOIA. In any event, the district court limited its ruling to a statement of EPA's *FOIA* duties, so Zemansky's contentions based on other statutes, the effect of which the district court stated it was not determining, are misguided.

Zemansky alternatively argues that the district court lacked jurisdiction to decide the issue because there was no case or controversy between the parties on the issue of the EPA's obligation to answer questions under the FOIA. Zemansky contends that he, "in fact, had never contended that EPA had a duty *'under FOIA'* to answer questions unrelated to document requests...." (Emphasis is Zemansky's.) However, the issue was framed by the pleadings. In his reply to the EPA counterclaim, Zemansky states:

Defendant EPA has a duty to respond to questions and provide information in addition to reasonably described agency records, which duty is provided by the Declaration of Independence, the Constitution of the United States, the First Amendment thereof, and the laws, statutes, and regulations under which defendant EPA operates, including but not limited to *The Freedom of Information Act, 5 U.S.C. § 553....*

(Emphasis added.)

■ As the passage demonstrates, disagreement existed over the requirements of the FOIA. Zemansky's second objection to the ruling, thus, also must fail.[3]

1. *Overbreadth of the Order*

■ Finally, Zemansky attacks those portions of the ruling requiring that his

---

3. We reject appellant's contention that the issue is moot and that the lower court judgment on the counterclaim must, therefore, be vacated. Where the appellant ceases to press an appeal, the appeal does become moot, but this does not retroactively moot the controversy originally presented to the district court. "[D]ismissal of the suit, as distinguished from dismissal of the appeal, might result in unfairness to appellee by subjecting him to other vexatious actions by appellant." *Ringsby Truck Lines v. Western Conference of Teamsters*, 686 F.2d 720, 721 (9th Cir.1982) (citing *Cover v. Schwartz*, 133 F.2d 541, 546–47 (2d Cir.), *cert. denied*, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1942)).

future requests be in a "separate document which is clearly defined as an FOIA request" and not "intertwined with non-FOIA matters." Although this is a sensible requirement to avoid future controversies of this nature between the parties and could well serve as a voluntary pattern for the future, the district court did exceed its judicial authority in requiring Zemansky's requests to be in a form different from that of any other person requesting information under the FOIA. The FOIA requires only that the request (1) reasonably describe the records and (2) comply with agency criteria for requests. 5 U.S.C. § 552(a)(3). The EPA regulation prescribing the form that FOIA requests are to take states: "A request shall be made in writing, shall reasonably describe the records sought in a way that will permit their identification and location, and should be addressed to one of the addresses set forth in § 2.106, but otherwise need not be in any particular form." 40 C.F.R. § 2.108. The method for seeking information under the FOIA is prescribed by Congress in the statute and by the EPA in its regulations; if more specific requirements are to be placed on the form of request, they must be made applicable to all by appropriate regulations by the EPA. The district court exceeded its authority in mandating special requirements for Zemansky.

### III

### CONCLUSION

Because the EPA submitted reasonably detailed, non-conclusory affidavits depicting adequate searches for the documents requested, the district court correctly granted summary judgment against Zemansky on his claim. We reject Zemansky's attacks on the district court decision granting summary judgment for EPA on its counterclaim. The court properly limited itself to a determination of the responsibilities of the EPA under the FOIA. Zemansky has conceded that the court correctly concluded that the EPA has no duty either to answer questions unrelated to document requests or to create documents.

Nor was the question lacking in controversy, as evidenced by Zemansky's reply to the EPA counterclaim. That portion of the order that mandates that Zemansky's FOIA requests be in a particular form is reversed. The statute and the EPA regulations prescribe the form that such requests must take. Each party shall bear its own costs on appeal.

AFFIRMED in part, and REVERSED in part.