**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr><td>

STEPHEN YAGMAN,<br>
    *Plaintiff-Appellant*,<br>
<br>
      v.<br>
<br>
MICHAEL POMPEO; CENTRAL<br>
INTELLIGENCE AGENCY,<br>
    *Defendants-Appellees.*

</td><td>

No. 15-55442<br>
<br>
D.C. No.<br>
2:14-cv-08033-<br>
PSG-E<br>
<br>
<br>
OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted December 9, 2016
Pasadena, California

Filed August 28, 2017

Before: A. Wallace Tashima and Richard A. Paez, Circuit
Judges, and Paul L. Friedman,[*] District Judge.

Opinion by Judge Paez

---

 [*] The Honorable Paul L. Friedman, United States District Judge for
the District of Columbia, sitting by designation.

## SUMMARY[**]

### Freedom of Information Act

The panel reversed the district court's dismissal for lack of subject matter jurisdiction, based on plaintiff's failure to exhaust administrative remedies, of an action against the Central Intelligence Agency and its director under the Freedom of Information Act ("FOIA"), seeking records identifying CIA personnel or affiliates that engaged in torture; and remanded for further proceedings.

The panel held that federal agencies have a duty to construe FOIA records requests liberally, and further held that the district court erred in concluding that plaintiff's request constituted a question rather than a request for records. The panel also held that the flaw with plaintiff's FOIA request was its vagueness, and defendants could not know what records would be responsive.

The panel held that the requirement in 5 U.S.C. § 552(a)(3) that a person submitting a FOIA request "reasonably" what he or she seeks is properly viewed as an ingredient of the claim for relief, rather than a question of subject matter jurisdiction.

The panel remanded to the district court with instructions to allow plaintiff to reframe his request for documents in light of the panel's holding and the CIA's repeated offers to assist him in formulating a reasonably specific request.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Stephen Yagman (argued), Venice Beach, California; Joseph Reichmann, Yagman & Reichmann, Venice Beach, California; Plaintiff-Appellant.

Gerard Sinzdak (argued) and Matthew M. Collette, Attorneys, Appellate Staff; Stephanie Yonekura, United States Attorney; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

**OPINION**

PAEZ, Circuit Judge:

Plaintiff Stephen Yagman filed suit against the Central Intelligence Agency ("CIA") and its director[1] (collectively, "Defendants") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records identifying CIA personnel or affiliates that have engaged in torture. The district court held that because Yagman's request for records constituted a question that Defendants were not required to answer, he failed to exhaust administrative remedies. The court further concluded that exhaustion of administrative remedies was a jurisdictional requirement, and therefore

---

[1] We have substituted Michael Pompeo for his predecessor, John Brennan, as Director of the CIA, *see* Fed. R. App. P. 43(c)(2), but we agree with Defendants that individual officials are not proper defendants in a FOIA action, *see Drake v. Obama*, 664 F.3d 774, 785–86 (9th Cir. 2011) (explaining that FOIA does not apply to individuals, only agencies). On remand, the district court should dismiss Pompeo as a defendant in this case.

dismissed Yagman's complaint for lack of subject matter jurisdiction. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings consistent with this opinion.

## I.

On August 2, 2014, Yagman sent Defendants a letter requesting "[r]ecords/information" on "the names and company/organization affiliations of any CIA employees, agents, operatives, contractors, mercenaries, and/or companies who are alleged to have engaged in torture of persons." Specifically, the letter sought the names and affiliations of those "as to whom President Obama stated that 'we tortured some folks' on August 1, 2014: that is, who are the individuals whom the word 'we' refers to?"[2]

---

[2] At an August 1, 2014 press conference, President Obama was asked about then-CIA Director Brennan and a report on the CIA's rendition, detention, and interrogation ("RDI") program. In his response, he stated:

> [E]ven before I came into office I was very clear that in the immediate aftermath of 9/11 we did some things that were wrong. We did a whole lot of things that were right, but we tortured some folks. We did some things that were contrary to our values.
>
> . . . .
>
> And that's what the report reflects. And that's the reason why, after I took office, one of the first things I did was to ban some of the extraordinary interrogation techniques that are the subject of that report.

Press Conference by the President, The White House (Aug. 1, 2014, 2:45 PM), https://www.whitehouse.gov/the-press-office/2014/08/01/press-conference-president (last visited July 31, 2017).

Within FOIA's twenty-day deadline, Defendants responded to Yagman with a letter advising him that "[u]nder the provisions of the FOIA, federal agencies are not required to answer questions posed as FOIA requests. Since your request does not constitute a request for records, we must decline to process it." Yagman reiterated his request in a subsequent letter, but Defendants reaffirmed their position.

Yagman then filed a class action complaint against Defendants to compel disclosure. Two months after service of the complaint, Defendants left two messages for Yagman instructing him to call the agency's FOIA hotline "to discuss his request." At his direction, Yagman's receptionist called the hotline. Defendants again asserted that the agency was unable to process Yagman's request, but they "expressed a willingness" to help him rework his request.

When Yagman did not contact the agency again, Defendants moved to dismiss Yagman's complaint for lack of subject matter jurisdiction. The district court granted Defendants' motion, holding that Yagman's letter did not constitute a request for records. The court concluded that Yagman's failure to submit a valid request was a failure to exhaust administrative remedies under FOIA, and, as a result, the court lacked subject matter jurisdiction. Yagman timely appealed.

## II.

We review de novo the district court's dismissal for lack of subject matter jurisdiction. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 974 (9th Cir. 2012).

## III.

Congress enacted FOIA in recognition of the fact that government transparency is critical to a functioning democracy, but may be difficult to achieve against unwilling officials. *John Doe Agency v. John Doe Corp*., 493 U.S. 146, 151–52 (1989). FOIA is therefore "broadly conceived," *id*. at 152 (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)), favoring "full agency disclosure unless information is exempted under clearly delineated statutory language," *id.* (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976)). Even the clearly delineated exemptions, however, "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.* (quoting *Rose*, 425 U.S. at 361). Accordingly, an agency must respond to any request for records that "(i) reasonably describes such records and (ii) is made in accordance with published [agency] rules" by promptly making the requested records available, 5 U.S.C. § 552(a)(3)(A), or, if applicable, by invoking one of FOIA's narrowly construed exemptions, *see id.* § 552(b).

In this case, Defendants neither produced the requested records nor invoked an exemption. Rather, Defendants rejected Yagman's letter as a question disguised as a FOIA request. Defendants alternatively argue that Yagman's request did not "reasonably describe" the records he sought and, therefore, did not trigger the CIA's duty to respond. Under either theory, Defendants argue that Yagman failed to exhaust his administrative remedies and, accordingly, the district court lacked subject matter jurisdiction.

We disagree, in all respects save one. Although Defendants were required to liberally construe Yagman's

letter as a request for records, the request nonetheless failed to "reasonably describe" the records sought. But this failure bears on the merits of Yagman's claim, not on the district court's subject matter jurisdiction. We therefore reverse the district court's judgment, and remand.

## A.

Our sister circuits have recognized that federal agencies have a duty to construe FOIA records requests liberally. *Rubman v. USCIS*, 800 F.3d 381, 389–91 (7th Cir. 2015) (explaining that the defendant agency was required to liberally construe plaintiff's request for "all documents" despite the ambiguity of the word "documents" in the request); *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1255 (11th Cir. 2008) (concluding that, even if ambiguous, the EPA was "obliged under FOIA to interpret [requests] . . . liberally in favor of disclosure"); *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (concluding that the Customs Service should have liberally construed a request for records "pertaining to" Ross Perot as seeking even those records that were not specifically indexed under Perot's name).[3]

---

[3] District courts have likewise recognized the duty of liberal construction, including within this circuit. *See Lawyers' Comm. for Civil Rights of S.F. Bay Area v. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1130 (N.D. Cal. 2008) ("An agency has a duty to construe a FOIA request liberally."); *see also, e.g.*, *Immigrant Def. Project v. ICE*, 208 F. Supp. 3d 520, 531–32 (S.D.N.Y. 2016) (concluding that ICE should have liberally construed a request for "overview documents"); *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 254–58 (D. Conn. 2012) (accepting in part, rejecting in part plaintiff's arguments that the Army and Navy failed to read records requests liberally); *Dayton Newspaper, Inc. v. Dep't of Veterans Affairs*, 510 F. Supp. 2d 441, 447 (S.D. Ohio 2007)

Indeed, the Department of Justice ("DOJ") itself has long issued guidance to federal agencies on the duty of liberal construction. *See* Dep't of Justice, Office of Info. Privacy, *FOIA Update*, *Vol. XVI, No. 3*, at 4 (1995) ("[A]gencies should interpret FOIA requests 'liberally' when determining which records are responsive to them." (quoting *Nation Magazine*, 71 F.3d at 890)), *available at* https://www.justice.gov/oip/blog/foia-update-oip-guidance-determining-scope-foia-request (last visited July 31, 2017); *see also* Dep't of Justice, Office of Info. Privacy, *Department of Justice Guide to the Freedom of Information Act: Procedural Requirements* 27 (last updated July 11, 2016) ("[A]n agency 'must be careful not to read [a] request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester.'" (quoting *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985)), *available at* https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/procedural-requirements.pdf (last visited July 31, 2017).

We have not yet had the opportunity to consider the issue. But we are persuaded that a duty of liberal construction accords with the basic purpose of FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins*

---

(noting that "[c]ourts have ruled that an agency should broadly construe the subject matter of a FOIA request"); *Nulankeyutmonen Nkihtaqmikon v. BIA*, 493 F. Supp. 2d 91, 113 (D. Me. 2007) (reasoning that "under the law, the BIA should have construed the . . . requests liberally," but ultimately concluding that the BIA's affidavit sufficiently explained the adequacy of its search).

*Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Liberal construction is warranted to achieve the core purpose of FOIA: allowing the public to find out "*what their government is up to*." *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quoting *Mink*, 410 U.S. at 105 (Douglas, J., dissenting)).

While we have rarely reviewed an agency's refusal to respond to a records request on the ground that it poses a question,[4] applying the duty to liberally construe records requests easily resolves this initial issue. Liberally construed, Yagman requested "[r]ecords/information" identifying CIA employees or affiliates who have engaged in torture after September 11, 2001. The fact that Yagman's request references President Obama's August 1, 2014 statement does not transform Yagman's request into a question.[5]  *See*

---

[4] The district court identified only one case where we appear to have been presented with a similar situation: *Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985). In *Zemansky*, however, the plaintiff was attempting to compel the EPA to answer questions "under several statutes and regulations other than the FOIA." *Id.* at 573. In response to the plaintiff's claims, we declined to disturb the district court's ruling that an agency has "no duty under the FOIA to answer questions *unrelated to a request for documents*, and it has no duty to create documents." *Id.* (emphasis added). *Zemansky* therefore clarifies the scope of an agency's duty under FOIA, but does not assist us in determining whether Yagman's letter should be construed as a question or as a request for records.

[5] Notably, government agencies have at least searched for (and, ultimately produced a limited number of) records in response to a similarly broad request for the "names and identities of detainees" secretly detained "since September 11, 2001." *Amnesty Int'l USA v. CIA*, No. 07 CIV. 5435 (LAP), 2008 WL 2519908, at *1 (S.D.N.Y. June 19, 2008). Although the district court in that case concluded that the agencies were not "required to compile a list of individuals it determined were subject to 'secret detention' and search for documents related to those individuals,"

*LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 347–48 (D.C. Cir. 2003) (concluding that an agency is required to "liberally" construe a request when the "drafter of a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof"). We therefore hold that the district court erred in concluding that Yagman's request constituted a question rather than a request for records.

## B.

The flaw of Yagman's FOIA request is its vagueness, not the way in which he framed it. As we observed in *Marks*, "FOIA requires that federal agencies make records available only upon a request which 'reasonably describes' the records sought." *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) (quoting 5 U.S.C. § 552(a)(3)). Although "courts have been wary to prohibit this requirement from becoming a loophole through which federal agencies can deny the public access to legitimate information, it has been held that broad, sweeping requests lacking specificity are not permissible." *Id.*[6] As Yagman submitted a poorly framed request with

---

the nature of the request did not prevent the agencies from conducting *some* search for responsive documents and providing those documents to the plaintiff. *Id.* at *13.

[6] This is not to say that Yagman's request fails simply because it may encompass a large number of documents. "[T]he number of records requested appears to be irrelevant to the determination whether they have been 'reasonably described.'" *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982); *see also* Dep't of Justice, Office of Info. Privacy, *FOIA Update Vol. IV, No. 3*, at 5 (1983) ("The sheer size or burdensomeness of a FOIA request, in and of itself, does not entitle an agency to deny that request on the ground that it does not 'reasonably describe' records within the meaning of 5 U.S.C. § 552(a)(3)(A)"). Indeed, "[t]he statute itself 'puts

limited specifics, Defendants could not know what records would be responsive.

Yagman insists that his request was not vague, but a description should "enable[] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Id.* (quoting H. Rep. No. 93-876, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6271). This inquiry does not require Yagman to identify documents or databases by name, but *some* reasonable description is required. In *Shapiro v. CIA*, for example, the D.C. district court held that a FOIA request for all CIA files that "mention" Nelson Mandela was reasonably descriptive under FOIA, since "the scope of [the plaintiff's] request [wa]s clear," *Shapiro*, 170 F. Supp. 3d at 155–56, and "should involve virtually no guesswork," *id.* at 154.

Here, Defendants would need to engage in quite a bit of guesswork to execute Yagman's request. His request does not identify specific persons, much less specific documents, types of documents, or types of information. Nor does his request suggest much in the way of times, dates, locations, or even clearly indicate if he is seeking the identities of those

---

no restrictions on the quantity of records that may be sought.'" *Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) (quoting *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 454 (D.D.C. 2014) , *aff'd sub nom. Tereshchuk v. Bureau of Prisons, Dir.*, No. 14-5278, 2015 WL 4072055 (D.C. Cir. June 29, 2015)). "Rather, it explicitly contemplates unusually large requests, affording reviewing agencies additional time 'to search for . . . a voluminous amount of separate and distinct records which are demanded in a single request.'" *Id.* (quoting 5 U.S.C. § 552(a)(6)(B)(iii)(II)).

who *have* engaged in torture or only those who are *alleged* to have engaged in torture.**[7]**

As the district court noted, Yagman's request would therefore require a search for "unspecified persons in unspecified locations during a vaguely defined time after September 11, 2001." Although FOIA does not require requesters to do more than "reasonably describe" the records sought, it does require more than Yagman has offered. Ultimately, therefore, he cannot compel Defendants to disclose documents on the basis of such a vague request.**[8]**

## C.

Our review does not end here. Defendants argue that Yagman's failure to "reasonably describe" the records sought constitutes a failure to exhaust administrative remedies and, as a result, the district court lacked subject matter jurisdiction. We disagree. The requirement in § 552(a)(3) that a person submitting a FOIA request "reasonably describe" what she or

---

**[7]** Defendants appear to further fault Yagman's request for failing to define the term "torture," but we reject that argument. FOIA was not enacted to serve as a tool only for lawyers or legal organizations, who often have the expertise and resources to craft legally rigorous requests. Rather, as we have noted above, FOIA provides a means for "*citizens*[] [to exercise their] right to be informed about what their government is up to." *Reporters Comm.*, 489 U.S. at 773 (emphasis added) (internal quotation marks omitted). No legal definition was therefore required. That said, the parties are free to reach a mutually agreed-upon definition if that would facilitate the processing of a FOIA request.

**[8]** It is worth noting, however, that even in *Marks*, the agency responded to the plaintiff's "broad, sweeping" request with at least *some* responsive documents. *Marks*, 578 F.2d at 263.

he seeks is properly viewed as an ingredient of the claim for relief, rather than a question of subject matter jurisdiction.

"Judicial opinions . . . often obscure the [law] by stating that the court is dismissing for lack of jurisdiction when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (internal quotation marks omitted). As the Supreme Court has explained, such "drive-by jurisdictional rulings . . . should be accorded no precedential effect." *Id*. (internal quotation marks omitted).

Instead, statutory requirements should be considered jurisdictional only when Congress "clearly states" as much. *Id*. at 515–16 ("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." (footnote omitted)). "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id*. at 516.

Drawing from the Supreme Court's opinions in *Arbaugh*, 546 U.S. 500, and later related cases,[9] we have recognized three factors that guide this inquiry. *Leeson*, 671 F.3d at 976–77. A requirement or rule is nonjurisdictional if it (1) "is not clearly labeled jurisdictional," (2) "is not located in a jurisdiction-granting provision," and (3) "no other reasons

---

[9] *See, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 438–39 (2011); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010).

necessitate[] that the provision be construed as jurisdictional." *Id*.; *see also Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 869–70 (9th Cir. 2011) (en banc), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc).

Here, the first two factors strongly suggest that the description requirement is nonjurisdictional. The requirement "is not clearly labeled jurisdictional" and "is not located in a jurisdiction-granting provision." *Leeson*, 671 F.3d at 976–77; *see also* 5 U.S.C. § 552(a)(3)(A)(i). Indeed, the statute's separate "jurisdiction-granting" provision makes no mention of the description requirement. *See* 5 U.S.C. § 552(a)(4)(B) (providing for jurisdiction in "the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia").

As to the third factor, we see no reason why the description requirement should be treated as jurisdictional. The district court and parties can address any FOIA request that fails to satisfy the description requirement with a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. There is no need to elevate the requirement to the status of a jurisdictional prerequisite.

To the extent Defendants argue the requirement must be satisfied for the purposes of exhaustion and exhaustion itself is jurisdictional, we reject that argument as well. Significantly, FOIA does not expressly require exhaustion, much less label it jurisdictional, nor does FOIA include exhaustion in its jurisdiction-granting provision. *See* 5 U.S.C. § 552(a)(4)(B). Therefore, exhaustion cannot be considered a jurisdictional requirement. *See Weinberger v. Salfi*,

422 U.S. 749, 766 (1975) (differentiating between an exhaustion requirement that is a "statutorily specified jurisdictional prerequisite" and a requirement that is "simply a codification of the judicially developed doctrine of exhaustion"); *I.A.M. Nat'l Pension Fund Ben. Plan C v. Stockton TRI Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984) ("Only when Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision . . . has the Supreme Court held that exhaustion is a jurisdictional prerequisite."); *see also Hidalgo v. FBI*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003) (same).

The majority of circuits, including the D.C. Circuit, *see Hidalgo*, 344 F.3d 1256, have concluded as much, *see Hull v. IRS*, 656 F.3d 1174, 1181–82 (10th Cir. 2011) (collecting cases). They agree that "exhaustion under FOIA is a prudential consideration rather than a jurisdictional prerequisite." *Id.* at 1182.

Our opinion in *In re Steele* does not dictate otherwise. There, we held that the district court lacked jurisdiction under FOIA because the plaintiffs never submitted a FOIA request to the relevant agency. *See United States v. Steele (In re Steele)*, 799 F.2d 461, 466 (9th Cir. 1986) ("Neither of [the plaintiffs] ever made a request . . . from the [agency] pursuant to the FOIA."). This is hardly the situation in Yagman's case, where he submitted a formal, albeit vague request pursuant to FOIA and reiterated his request to Defendants when they rejected it.

Although *In re Steele* does assume that "[e]xhaustion of a part[y's] administrative remedies is required under the FOIA before that party can seek judicial review," 799 F.2d at

465, this statement appears, at most, to be the type of "drive-by jurisdictional ruling" that the Supreme Court warned against twenty years after *In re Steele* was decided. The statement is further undermined by the fact that we considered whether the futility exception to exhaustion applied. "If exhaustion was strictly jurisdictional, [we] would have had no need to address the issue of the 'futility exception' at all. In that sense, *In re Steele* actually supports a conclusion that exhaustion is a jurisprudential doctrine, rather than a jurisdictional one." *Andrus v. Dep't of Energy*, 200 F. Supp. 3d 1093, 1101 (D. Idaho 2016).[10] Even if it did not, we are confident that the statement in *In re Steele* is nothing more than a drive-by ruling.[11] Ultimately, any failure to exhaust does not bear on the district court's subject matter jurisdiction.

### D.

We conclude that the district court erred when it dismissed the case for lack of subject matter jurisdiction, and we reverse the district court's judgment. But we agree with the district court that Yagman failed to "reasonably describe"

---

[10] In *Andrus*, the district court anticipated our holding today when it correctly concluded that the "lack of unequivocal language in FOIA otherwise requiring exhaustion for purposes of subject matter jurisdiction . . . [renders] exhaustion under FOIA a jurisprudential requirement," not a jurisdictional one. *Andrus*, 200 F. Supp. 3d at 1101.

[11] To the extent that *In re Steele* could be read to hold that exhaustion under FOIA ranks as jurisdictional, we decline to follow it. *Leeson*, 671 F.3d at 979 (explaining that a three-judge panel may overrule a prior three-judge panel opinion when the prior opinion "is clearly irreconcilable with the reasoning or theory of intervening higher authority" (quoting *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc)).

the records he sought.  Nonetheless, we remand to the district court with instructions to allow Yagman to reframe his request for documents in light of our holding and the CIA's repeated offers to assist him in formulating a reasonably specific request.  The district court may stay proceedings as it deems appropriate to allow the parties to work out any revised request, if possible, and to allow the CIA to respond to any revised request as permitted under FOIA or any implementing regulations.

Providing the CIA another opportunity to assist in developing a more descriptive request is not only appropriate, but also warranted, given that the CIA's own regulations state that requests "which do not meet [the reasonable description] requirements will be considered an expression of interest and the Agency will work with, and offer suggestions to, the potential requester in order to define a request properly." 32 C.F.R. § 1900.12(c); *accord Hall & Assocs. v. EPA*, 83 F. Supp. 3d 92, 104 (D.D.C. 2015) (directing the defendant agency to cooperate with the plaintiff "in accordance with [its] FOIA regulations," which require the agency to assist those requesting records).

Additionally, we note that courts have held that an agency has "no right to 'resist disclosure because the request fails "reasonably [to] describe" records unless it has first made a good faith attempt to assist the requester in satisfying that requirement.'" *Ruotolo v. Dep't of Justice, Tax Div*., 53 F.3d 4, 10 (2d Cir. 1995) (quoting *Ferri v. Bell*, 645 F.2d 1213, 1221 (3d Cir. 1981), *modified on other grounds*, 671 F.2d 769 (3d Cir. 1982)).  While Defendants did contact Yagman to "discuss" his request three months *after* he filed this lawsuit, his request had already been twice rejected with no offer to

"work with, and offer suggestions to, the potential requester in order to define a request properly."

The judgment is **REVERSED** and **REMANDED.**