# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 7, 2019            Decided March 10, 2020

No. 18-5068

MICHAEL S. EVANS,
APPELLANT

v.

FEDERAL BUREAU OF PRISONS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-02274)

*Ari Holtzblatt*, appointed by the court, argued the cause as *amicus curiae* in support of plaintiff-appellant. With him on the briefs was *Daniel S. Volchok*.

*Johnny H. Walker III*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: MILLETT and KATSAS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*:  Michael Evans was a federal prisoner when the underlying events leading to the current litigation occurred.  Evans was stabbed from behind with a screwdriver in the prison dining hall.  Later, Evans submitted a Freedom of Information Act ("FOIA") request to the Federal Bureau of Prisons (the "Bureau") seeking to compel the release of records related to the screwdriver, as well as surveillance footage of the episode.  The Bureau was unable to locate any responsive records related to the screwdriver and withheld the surveillance footage asserting various FOIA exemptions.  After exhausting the administrative appeals process, Evans filed suit in district court.  The district court granted summary judgment in favor of the Bureau.  The court held that the Bureau's response to Evans's request for records related to the screwdriver was adequate, and that the Bureau justified withholding the surveillance footage in full under FOIA Exemptions (b)(7)(C) and (b)(7)(E).  Evans filed the instant appeal, and we appointed *Amicus Curiae* to argue on his behalf.[1]

For the reasons that follow, we affirm the district court's grant of summary judgment insofar as it pertains to the Bureau's response to Evans's request for records related to the screwdriver.  However, we vacate and remand the judgment to

---

[1] Because appellant has fully adopted the briefs and arguments of the amicus, we will throughout the opinion attribute those positions to the appellant.  We thank the amicus for his service to the court.

the district court as to the Bureau's withholding of the surveillance footage under Exemptions (b)(7)(C) and (b)(7)(E).

## I.  BACKGROUND

### A.  Facts and History

On May 2, 2013, while Evans was incarcerated at Federal Correctional Institution ("FCI") Gilmer in Glenville, West Virginia, another inmate stabbed him multiple times with a Phillips-head screwdriver in the prison dining hall.  Following that incident, Evans sued the United States under the Federal Tort Claims Act ("FTCA") and individual officers employed at FCI Gilmer under 42 U.S.C. § 1983, alleging in both cases that the screwdriver was FCI Gilmer property that the corrections officers failed to properly secure.  The Bureau disclaimed ownership of the tool, and those suits were dismissed.  J.A. 58; *Evans v. United States*, No. 3:15-CV-64, 2016 WL 4581339, at *2 (N.D. W. Va. Sept. 2, 2016) ("The modified screwdriver used in the Plaintiff's assault was not a [Bureau] tool."); *Evans v. Officer Cunningham*, No. 2:15-CV-60, 2016 WL 3951157, at *6 (N.D. W. Va. July 20, 2016) (noting that the report and recommendation from the magistrate showed that the screwdriver was "a non-[Bureau] tool, not subject to [Bureau] tool-control policies").

While those lawsuits were pending, Evans submitted his initial FOIA request to the Bureau seeking the following:

> Names, numbers, and addresses to all companies that shipped and/or delivered tools, recreation equipment, maintenance equipment, and machines to Federal Correctional Institution–Gilmer in Glenville, West Virginia 26351, from January 2003, to, June 2013.

F.C.I.–Gilmer[']s, Receiving and Departure Logs for all tools, recreation equipment, maintenance equipment, and machines shipped and/or delivered to F.C.I.–Gilmer from January 2003, to, June 2013.

Names and pictures of all tools, recreation equipment, maintenance equipment, and machines shipped and/or delivered to F.C.I.–Gilmer, from January 2003, to, June 2013.

A copy of the video footage of the May 02, 2013 incident of Michael Evans being assaulted in the inmate dining area at F.C.I.–Gilmer.

J.A. 8–9. The Bureau responded that it would cost approximately $14,320 to process Evans's request. *Id.* at 10. Due to the high cost, the Bureau allowed Evans the opportunity to reformulate his request. *Id.*

Evans took advantage of that opportunity. In an apparent attempt to narrow his request for records related to the screwdriver, he included a picture of the tool and stated that

the screwdriver may have been a[] maintenance accessory tool that came with recreation, or maintenance equipment. I would like the name of the company that made the tool, along with the phone number and mailing address of the company. I would like to know what is the tool used for and what equipment it came with, and when that equipment was delivered to F.C.I. Gilmer in Glenville, WV 26351.

*Id.* at 38–39. Additionally, he again sought surveillance footage of the incident. *Id.*

The Bureau contacted FCI Gilmer officials for assistance in locating responsive materials. *Id.* at 43. This time, the Bureau located the prison-surveillance footage but withheld it from disclosure under FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(E), and (b)(7)(F). *Id.* As to any records pertaining to the screwdriver, the Bureau responded that, because the FCI Gilmer officials did not recognize the screwdriver or know from where it originated, they were "unable to ascertain what records to search." *Id.*

Evans appealed the Bureau's decision to the Office of Information Policy ("OIP"). OIP determined that the surveillance footage was properly withheld under Exemptions (b)(7)(C), (b)(7)(E), and (b)(7)(F). *Id.* at 51. It also stated that the Bureau "does not have the capability to segregate images potentially responsive to [Evans's] request from the images of third parties on video recordings." *Id.* at 52. Thus, it justified withholding the entire video under Exemption (b)(7)(C). *Id.* As to the requests related to the screwdriver, OIP explained that "FOIA does not require federal agencies to answer questions or create records in response to a FOIA request, but rather is limited to requiring agencies to provide access to reasonably described, nonexempt records." *Id.* Accordingly, OIP affirmed the Bureau's response to Evans's requests. *Id.*

Evans filed this action in the district court. Evans claimed that the Bureau's response to his request for records related to the screwdriver was inadequate because he did not ask the Bureau to answer questions or conduct research but, instead, reasonably described the records sought. Evans also objected to the Bureau's withholding the video footage. He argued that none of the claimed exemptions applied, and that at least some

portion of the footage is segregable and that the Bureau must possess the technological capability to segregate it.

The Bureau moved for summary judgment, relying on a declaration filed by Sharon Wahl, a paralegal from the Beckley Consolidated Legal Center at the Federal Correctional Institution in Beckley, West Virginia. The district court first determined that Evans's request related to the screwdriver "indeed call[ed] for responses to inquiries." *Evans v. Fed. Bureau of Prisons*, No. 16-2274, 2018 WL 707427, at *3 (D.D.C. Feb. 5, 2018). The district court emphasized that Evans "expected the [Bureau] to identify [the screwdriver's] manufacturer, to provide the manufacturer's phone number and mailing address, to specify the tool's use and to explain how and when a particular screwdriver found its way to FCI Gilmer." *Id.* Thus, the district court upheld the Bureau's nondisclosure of records related to the screwdriver.

It then ruled that the Bureau properly withheld the footage under Exemptions (b)(7)(C) and (b)(7)(E). As to Exemption (b)(7)(F), however, the district court found that the Bureau failed to justify withholding the footage under that exemption. *Id.* at 6. Additionally, the court deferred to Wahl's declaration in holding that no portion of the video was segregable and, even if it were, the Bureau lacks the technological capability to segregate it. *Id.* Accordingly, the district court granted the Bureau's motion for summary judgment.

For the reasons that follow, we affirm the district court's ruling as to the screwdriver, but not as to the withholding of the videotapes under Exemptions (b)(7)(C) and (b)(7)(E) and the Bureau's ability to segregate the footage. We take no issue with the district court's holding as to Exemption (b)(7)(F).

### B. Legal Framework

As the Supreme Court stated in *Department of Air Force v. Rose*, FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." 425 U.S. 352, 361 (1976) (quoting *Rose v. Dep't of Air Force*, 495 F.2d 261, 263 (2d Cir. 1974)). However, "Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Accordingly, FOIA exempts nine categories of records from disclosure, 5 U.S.C. § 552(b), seeking "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1976) (quoting S. Rep. No. 89-813, at 3 (1965)).

Relevant to this appeal, Exemption (b)(7) allows an agency to withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy [or] . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7). Additionally, "[a]ny reasonably segregable portion of a record shall be provided to any person

requesting such record after deletion of the portions which are exempt under this subsection." *Id.* § 552(b). "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

When an agency identifies responsive records but withholds them under one of the FOIA exemptions, it bears the burden of demonstrating that the records were properly withheld. *See Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). To meet this burden, the agency can submit affidavits that "show, with reasonable specificity, why the documents fall within the exemption." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Service*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that "reasonably describes such records." 5 U.S.C. § 552(a)(3)(A). "A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.'" *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)). In light of FOIA's pro-disclosure purpose, an agency has "a duty to construe a FOIA request liberally." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). Thus, an agency may not refuse to comply with a FOIA request simply because the request is phrased in the form of a question. *See Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017) ("The flaw of Yagman's FOIA request is its vagueness, not the way in which he framed it."). Instead, the agency should determine whether, construing the request liberally, "it in fact has created and retained" responsive

records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).

If the agency determines that it does not possess any records responsive to a FOIA request, it bears the burden of demonstrating the adequacy of its search. *See Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017). The agency meets its burden if it shows that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Again, the agency may make this showing "by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Reporters Comm. for Freedom of the Press*, 877 F.3d at 402 (quoting *Oglesby*, 920 F.2d at 68).

## II.   SUMMARY JUDGMENT

We review the district court's grant of summary judgment *de novo*. *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994). Summary judgment may be granted only when the moving party, in this case the Bureau, is able to show that there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In this case, that would require the Bureau to establish beyond factual dispute that its failure to produce responsive records comes outside the mandate of FOIA either by virtue of the nonexistence of the records or by a factually indisputable right to protection under one of the statutory exemptions.

We will affirm the grant of summary judgment if, viewing the record in the light most favorable to the nonmovant, there are no genuine disputes of material fact and the movant is

entitled to judgment as a matter of law. *Id.* "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). In the FOIA context, "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Gallant*, 26 F.3d at 171 (quoting *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980)). Otherwise put, agency affidavits that are "'relatively detailed and non-conclusory, and . . . submitted in good faith'. . . are accorded a presumption of good faith.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (first alteration in original) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III. ANALYSIS

### A. Screwdriver Records

We first address appellant's argument that the Bureau's response to the request for records related to the screwdriver was inadequate because it reasonably described the records sought and did not ask the Bureau to create new records or answer questions. We disagree and affirm the decision of the district court. Nothing in the record refutes the Bureau's repeated assertions that it knows nothing about the screwdriver and has no records responsive to Evans's demands.

Appellant argues that by framing the requests related to the screwdriver as seeking answers to questions and thus refusing to conduct a search in the first place, the Bureau shirked its responsibility to conduct a search for the records under FOIA. Appellant asserts that, even if the request was phrased as a

question, the Bureau may only refrain from producing documents "if doing so would require creating a *new* record." *Amicus Curiae* Br. in Support of Plaintiff-Appellant at 34. Further, appellant contends that the initial request and the reformulated request should be construed together. Because the Bureau estimated the cost to conduct a search in response to his initial request, appellant argues that it necessarily understood the request and believed responsive documents to exist. Thus, his narrower reformulated request could have been satisfied with production of the same types of records. Even if Evans's original and reformulated requests are read together, they are insufficient.

While appellant correctly points out that the Bureau cannot refuse to conduct a search simply because a request is framed as a question, the more relevant issue, as noted above, is whether Evans reasonably described documents that the Bureau has in fact created and retained. *See Kowalczyk*, 73 F.3d at 388. This turns, at least in part, on whether the screwdriver was prison property in the first place. But the Bureau has claimed in this case and in prior related proceedings that it did not own the screwdriver and that Evans's assumptions to the contrary are flawed. Appellee's Br. at 11; *Evans*, 2016 WL 4581339, at *2; *Cunningham*, 2016 WL 3951157, at *6.

In fact, when Evans included the picture of the screwdriver in his reformulated request, the Bureau sent the photo to FCI Gilmer officials who responded that they did not recognize the screwdriver, leaving them "unable to ascertain what records to search." J.A. 43; *Evans*, 2016 WL 4581339, at *2; *Cunningham*, 2016 WL 3951157, at *6. The request was thus presented to professional employees of the Bureau who are familiar with the subject area of the request, but those officials were unable to determine what records to search with a

reasonable amount of effort. *See Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002).

Moreover, even when the two requests are construed together, the reality is that Evans's reformulated request fundamentally altered his initial request. In an effort to reduce the costs of responding to his request, Evans abandoned his broad requests for shipping logs, delivery logs, and maintenance equipment information over a span of ten years. Instead, he narrowed his request to seek only documents specifically related to a particular screwdriver. Indeed, records not containing information related to that screwdriver might not have been considered responsive to Evans's request. In light of the Bureau's affidavit stating that FCI Gilmer officials did not recognize the screwdriver referenced above, it was necessarily unable to produce responsive records.

Appellant has provided us with no reason to doubt the veracity of the prison officials' response, nor has he presented anything to convince us that the screwdriver must have been prison property. As far as we know, it is entirely plausible that the prison officials did not recognize the screwdriver because it was not prison property. Prisoners are capable of smuggling contraband into prison, including weapons and other materials. *See, e.g.*, *Bame v. Dillard*, 637 F.3d 380, 385 (D.C. Cir. 2011) (noting that "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence" in detention facilities (quoting *Bell v. Wolfish*, 441 U.S. 520, 559–60 (1979) (alteration in original))). Without any evidence beyond unfounded claims speculating that the screwdriver was prison property or that the Bureau's response should not otherwise be accorded the presumption of good faith, the Bureau's efforts to identify the screwdriver by contacting prison officials and its statement that it was unable to conduct a search for responsive records because the prison officials did not possess such a tool

are sufficient to support the grant of summary judgment. *See SafeCard Servs., Inc.*, 926 F.2d at 1200. Accordingly, we affirm the district court's judgment as it relates to Evans's request for screwdriver records.

## B. Surveillance Footage

Next, we turn to appellant's contention that the Bureau failed to justify withholding the surveillance footage under FOIA Exemptions (b)(7)(C) and (b)(7)(E), and that, even if withholding was proper, at least some portion of the video was segregable. On these points, we agree with appellant that the Bureau failed to justify withholding the footage on this record. Accordingly, we vacate the district court's judgment as to those issues and remand for further proceedings.

We begin the analysis of the Bureau's claimed exemptions regarding the entirety of the videotape with the underlying principles stated above. That is, the congressional philosophy in the adoption of FOIA favors disclosure, not concealment. To exercise the exceptions warranted by the statute, the government bears the burden of proving the applicability of the statutory exemption. *See Summers*, 140 F.3d at 1080. With respect to the claimed exemption under (b)(7)(C), in order to be entitled to summary judgment, the Bureau needed to establish beyond any genuine dispute that the disclosure of the withheld records "could reasonably be expected to constitute an *unwarranted* invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (emphasis added). As discussed above, an agency claiming a FOIA exemption may carry this burden by the production of affidavits. *Hayden*, 608 F.2d at 1387. However, we remind the government that such "affidavits must show, with reasonable specificity, why the documents fall within the exemption." *Id.* Further, we have long held that "[t]he affidavits will not suffice if the agency's claims are

conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Id.* The affidavit relied upon by the Bureau fails on all counts. It lacks specificity; it is conclusory; and it recites statutory language without demonstrating its applicability to the information withheld.

More specifically, statutory Exemption (b)(7)(C) requires that, to be exempted, information must "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). With respect to that claimed exemption, the Bureau stated that the "footage contained the images of approximately 70 or more other individuals" and, thus, disclosure of the footage "*may* constitute an unwarranted invasion of privacy." J.A. 27 (emphasis added). This will not do. To shelter otherwise responsive data under the protection of Exemption (b)(7)(C) by the terms of the statute, the government agency must show that the disclosure "could reasonably be expected to constitute an . . . invasion of personal privacy," and that this invasion is "unwarranted." 5 U.S.C. § 552(b)(7)(C). The language of the affidavit that the disclosure of the video recording "may" constitute an unwarranted invasion is far too vague and unspecific to remove all factual issue as to whether it could reasonably be expected to invade personal privacy and that such invasion would be unwarranted.

So far as we know from the current affidavit, all information that would be revealed is that seventy or so inmates were eating a meal in a place where they were not only expected to be, but were required by law to reside. It is true that we have discouraged serial summary judgment motions after the government's first loss. *See Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 769 (D.C. Cir. 2000). We recognize, however, that responding to a request for videotape rather than printed data may have been a novel experience for the Bureau.

Therefore, it may be that on remand, the district court will permit more flexibility than in the customary case. It is further possible that the Bureau will be no more able to make a showing entitling it to withholding than it has so far. That of course leaves open the possibility that the court might grant a summary judgment in favor of Evans. Unusual as it may be, this may be the rare FOIA case that results in a trial in which the court would have to find facts as to the applicability of the exemptions.

If in possible further proceedings, the Bureau is able to produce additional evidence supporting this claimed exemption, it needs to do so with specificity and without vagueness in such a fashion that the courts can say with confidence that the statutory standard has been met. In other words, as we stated above, the government may carry its burden by the introduction of affidavits, but only if "affidavits . . . show, with reasonable specificity, why the documents fall within the exemption." *Hayden*, 608 F.2d at 1387.

Even if we were to accept the Bureau's current affidavit as adequately bringing the document within the protection of this exemption, we are still confronted with the vagueness of the government's claim of inability to segregate unprotected data. As we discussed with the government at oral argument, if we assume that the video record does constitute an unwarranted invasion of privacy as to individuals in the record, it is not at all clear from the government's affidavit why it cannot segregate the portions of the record that do not do so. More specifically, we live in an era in which teenagers regularly send each other screenshots from all sorts of video media. Presumably, most of these teenagers have fewer resources than the United States government. It is not at all clear why the government could not at least isolate some screenshots that

would meet the same sort of segregability standards typically applied to printed material.

The government further does not explain why it cannot by use of such techniques as blurring out faces, either in the video itself or in screenshots, eliminate unwarranted invasions of privacy. The same teenagers who regale each other with screenshots are commonly known to revise those missives by such techniques as inserting cat faces over the visages of humans. While we do not necessarily advocate that specific technique, we do hold that the government is required to explain why the possibility of some similar method of segregability is unavailable if it is to claim the protection of the exemption.

The Bureau's affidavit supporting its claim to protection of the data under Exemption (b)(7)(E) suffers from the same shortcomings as the other exemption claim. The Bureau argued that releasing the footage "would reveal the specific law enforcement methods employed in responding [to] and/or conducting the investigation into the prohibited conduct" and would "demonstrate[] the location of video cameras." J.A. 27. Thus, prisoners could "modify[] their criminal behavior to prevent detection and circumvent the methods law enforcement officers use to discover the existence of and investigate the conduct of prisoners." *Id.*

We do not question the government's good faith on this subject. However, we do note its vagueness and lack of specificity. For example, the affidavit does not even make clear whether the location of video cameras would be visible to inmates in the prison dining hall. Moreover, it does not address the field of view of any or all of the cameras so as to reveal potential blind spots—a concern first raised in the Bureau's briefs. And it is not possible from the words of the affidavit to

determine whether the government is actually describing anything in the way of technique or placement of cameras that is sufficient to overcome the statutory presumption in favor of disclosure. Summary judgment on this issue would require that the Bureau show that there is no genuine dispute as to whether the placement and visibility of cameras is such that exposure of the video recording would in fact provide any new information not already available through observation by prisoners physically present in the dining room. Even if exposure of the cameras' field of view would result with respect to some cameras, the affidavit does not establish that it would make an exempt exposure if only the views from one specific camera were shown; that is to say one camera location of which is readily visible, for example. Similarly, as to law enforcement techniques, if all the Bureau is able to show is that, when a prisoner does something violent, guards respond to the location of the violence and take action to control the prisoner, that is not likely to fall within the exemption.

We understand that the Bureau may be concerned that if an affidavit were more detailed and specific, it might reveal information protected by the FOIA exemptions. This is not an insurmountable problem. True, we have many times reminded litigants that it is not necessary for district courts to conduct an *in camera* inspection in every FOIA case. *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) ("[*I*]n camera review should not be resorted to as a matter of course."). However, this case may constitute an exceptional circumstance warranting such inspection if the Bureau continues to insist on the applicability of this exemption after remand. Indeed, as the present record is not sufficient to support summary judgment, such an examination by the court may be necessary should this case result in a rare FOIA trial. That is, in such a trial, the district court would need to make findings of fact as to the exemptions, and it is difficult to see how this could be done without more

than what the Bureau has offered in the affidavit. In summary, the agency's declaration is too unspecific on its own to establish that withholding the footage under the exemptions is justified.

## IV.    CONCLUSION

We enter a judgment affirming the district court as to the responses concerning the screwdriver. However, as to the responses concerning the video recording, we vacate the judgment granted by the district court and remand the matter for further proceedings.

*So ordered.*